UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:22-CR-00587-AGF |
| | ) | |
| ELIJAH BRIGGS, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Elijah Briggs, represented by defense counsel Rachel Korenblat, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Counts 1 through 3, 10, and 11 of the indictment, the Government agrees to move for the dismissal as to the defendant of Counts 12 through 15 at the time of sentencing. Moreover, the United States agrees that no further federal prosecution will be

1

brought in this District relative to the defendant's bank fraud, wire fraud, theft of mail, and aggravated identity theft, from 2019 through 2022, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request. The parties further agree to jointly recommend a 12-month credit for Defendant's sentence, as ultimately determined by the Court based on the U.S. Sentencing Guidelines and Title 18, United States Code, Section 3553(a), in consideration of Defendant's time spent incarcerated on indicted or relevant conduct prior to Defendant's federal incarceration.

**3. ELEMENTS:**

As to Counts 1 through 3, the defendant admits to knowingly violating Title 18, United States Code, Section 1344, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant knowingly executed a scheme or artifice to obtain the money, funds, or other property owned by or under the control of a financial institution by means of materially false or fraudulent pretenses, representations, or promises; and

**Two**, the defendant did so with the intent to defraud; and

**Three**, the financial institution fit the definition in 18 U.S.C. § 20.

2

As to Counts 10 and 11, the defendant admits to knowingly violating Title 18, United States Code, Section 1028A, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

**One**, the defendant knowingly transferred, possessed, or used;

**Two**, without lawful authority;

**Three**, a means of identification of another person;

**Four**, during and in relation to the felony offense of wire fraud.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

Beginning 2018 or 2019, the defendant, Elijah Briggs began stealing United States mail from mailboxes, and taking blank checks and other personally identifiable information left in abandoned homes in his capacity as a contractor.

In 2019, the defendant accessed victim D.B.'s and victim N.B.'s bank accounts via the online account portal at The Missouri Bank. The defendant changed the contact information in those accounts, specifically the email addresses and phone numbers, to contact information associated with the defendant. Following the accessing of those accounts, the defendant transferred money to a PayPal account and bank accounts in the names of other identity theft victims and attempted to pay his and others' bills with the account funds, creating or attempting to create a loss of $2,711.44.

At approximately the same time as the defendant's theft from victims D.B. and N.B., the defendant stole a check from D.B.'s neighbor's mailbox. The defendant altered the check to be

3

made payable to M.B., the defendant's former spouse, and altered the amount payable. The defendant then deposited that check at a U.S. Bank ATM, creating a loss of $1,264.00.

Following these thefts, the defendant was found to be in possession of stolen mail belonging to dozens of people, more than 30 stolen debit or credit cards, and over 100 checks in the names of other people. The total amount of stolen or fraudulent checks found during this search was $116,279.10. The defendant also possessed a notebook containing the names and personally identifiable information of several other individuals.

In 2021, the defendant was employed with victim business A.P. While working with A.P. the defendant stole and used a credit card from a client of the business while in that client's home, for a loss of $103.88. After the victim business terminated defendant's employment, the defendant attempted to cash his legitimate payroll check from A.P. multiple times, for an intended loss amount of $1,215. The defendant then created additional fraudulent checks using A.P.'s banking information, which were cashed by co-Defendants Holly Naylor and Reuben Kim, for a total loss amount of $5,345.89. A search of the defendant's laptop showed many checks, including the fraudulent A.P. checks, that had been created by the defendant on the laptop using "Check Robot." The total intended loss for the "Check Robot"-created checks on Defendant's laptop was $35,098.95. Among the fraudulent checks found on the defendant's laptop were checks made out to co-Defendant Jessica Kirkpatrick, using the account information of victim business N.G., which co-Defendant Jessica Kirkpatrick cashed. The total loss for the checks cashed on N.G.'s account was $4,932.05.

In October 2021, Defendant was stopped by St. Charles, Missouri police while operating a motor vehicle. Defendant had an active warrant for his arrest. Defendant had in his vehicle drugs and drug paraphernalia and numerous stolen or fraudulent checks bearing different business names

and personal information of other people, other documents containing various personal information of other people, blank check paper, a laptop, and a printer. The total amounts of the checks found in Defendant's vehicle was $40,423.82.

The defendant admits herein that he knowingly executed a scheme to obtain any of the money or funds owned by or under the custody and control of financial institutions by means of materially false or fraudulent pretenses, that he did so with the intent to defraud, and that the financial institutions fit the definition of a financial institution in 18 U.S.C. § 20, to wit: by fraudulently altering the payee and payment amount of a legitimate check, Check #7646 of C.S and J.S.'s account, and depositing said check, stolen from the U.S. Mail, into a US Bank ATM in the amount of $1,264.00.

The defendant further admits herein that he knowingly executed a scheme to obtain any of the money or funds owned by or under the custody and control of financial institutions by means of materially false or fraudulent pretenses, that he did so with the intent to defraud, and that the financial institutions fit the definition of a financial institution in 18 U.S.C. § 20, to wit: by accessing the online The Missouri Bank accounts of D.B. and N.B. and electronically withdrawing money or attempting to withdraw money from those accounts in the total amount of $2,711.44.

The defendant further admits herein that he knowingly executed a scheme to obtain any of the money or funds owned by or under the custody and control of financial institutions by means of materially false or fraudulent pretenses, that he did so with the intent to defraud, and that the financial institutions fit the definition of a financial institution in 18 U.S.C. § 20, to wit: by cashing or attempting to cash one legitimate payroll check, from victim business A.P., at multiple banking institutions at the same time, knowing he had no authorized or legal purpose for cashing or depositing the payroll check more than once, for an intended loss of $1,215.

5

The defendant further admits herein that he knowingly possessed, transferred, and used, without lawful authority, a means of identification of another person, to wit: the name, date of birth, and Social Security Number of victim D.B., knowing that the means of identification belonged to another actual person, during and in relation to the commission of the felony offense of wire fraud, as follows: opening three bank accounts online with PNC Bank; opening two bank accounts online at Bank of America, and attempting to open a bank account online with Capital One.

## 5. STATUTORY PENALTIES:

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty in Counts 1 through 3 is imprisonment of not more than 30 years, a fine of not more than $1,000,000, or both such imprisonment and fine. The Court may also impose a period of supervised release of not more than 5 years.

The defendant further understands that the penalty provided by law for the crime to which the defendant is pleading guilty in Counts 10 and 11 is a statutory term of imprisonment of 2 years, consecutive to any other sentence of imprisonment. The Court may also impose a period of supervised release of not more than 1 year.

## 6. U.S. SENTENCING GUIDELINES (2021 MANUAL):

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category. The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a.** **Chapter 2 Offense Conduct:**

    **(1)** **Base Offense Level:** The parties agree that the base offense level for Counts 1 through 3 is **7**, as found in Section 2B1.1(a)(1). The parties further agree that the guideline sentence for Counts 10 and 11 is **2 years per count**, per Section 2B1.6 and as required by statute, and Chapters Three and Four of the Sentencing Guidelines do not apply to those counts.

    **(2)** **Specific Offense Characteristics:** The parties agree that the following Specific Offense Characteristics apply: **10** levels should be added pursuant to Section 2B1.1(b)(F) as the total intended loss amount was more than $150,000 but less than $250,000; and **2** levels should be added pursuant to Section 2B1.1(b)(2)(A)(i) as the offenses and relevant conduct involved 10 or more victims.

**b.** **Chapter 3 Adjustments:**

    **(1)** **Acceptance of Responsibility:** The parties agree that **3** levels should be deducted pursuant to Section 3E1.1(a) and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty. The parties agree that the defendant's eligibility for this deduction is based upon information presently known. If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

    **(2)** **Other Adjustments:** The parties agree that the following additional adjustments apply: **2** levels should be added pursuant to Section 3B1.1(c) as the defendant was an organizer or leader in any criminal activity.

**c. Other Adjustment(s)/Disputed Adjustments:** none.

**d. Estimated Total Offense Level:** The parties estimate that the Total Offense Level is 18.

**e. Criminal History:** The determination of the defendant's Criminal History Category shall be left to the Court. Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category. The defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

**f. Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

**a. Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

**(1) Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery and the guilty plea.

**(2) Sentencing Issues:** The parties agree to waive the right to appeal all sentencing issues except those related to: (1) application of Sentencing Guideline offense-level adjustments (including those based on criminal history) not specifically set forth in the plea agreement or or non-

8

application of adjustments specifically set forth in the agreement; (2) calculation of the defendant's criminal history category; or (3) substantive reasonableness of the sentence—above the Guideline range ultimately determined by the Court for appeals taken by the defendant, or below that range for appeals taken by the Government.

**b. Habeas Corpus:** The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

**c. Right to Records:** The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

## 8. OTHER:

**a. Disclosures Required by the United States Probation Office:** The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

**b. Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:** Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

**c. Supervised Release:** Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime

9

defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release.  The defendant understands that parole has been abolished

**d.  Mandatory Special Assessment:**  Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $500, which the defendant agrees to pay at the time of sentencing.  Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

**e.  Possibility of Detention:**  The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

**f.  Fines, Restitution and Costs of Incarceration and Supervision:**  The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision.  The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately.  Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c).  Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss.  The defendant agrees to provide full restitution to all victims of all charges in the indictment.

**g.  Forfeiture:**  The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation,

10

whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice. By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agencies.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in

11

fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. **VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT:**

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

12

## 11. CONSEQUENCES OF POST-PLEA MISCONDUCT:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. NO RIGHT TO WITHDRAW GUILTY PLEA:

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

4/24/24

Date

Diane Klocke
Special Assistant United States Attorney

4-24-24

Date

Elijah Briggs
Defendant

4-24-24

Date

Rachel Korenblat
Attorney for Defendant

13